UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


AARON HANSEN, ET AL.,          )     CASE NO:  2:13-CV-00242
                               )
              Plaintiffs,      )           CIVIL
                               )
      vs.                      )      Corpus Christi, Texas
                               )
TOTAL SCREEN SOLUTIONS, INC.   )
ET AL.,                        )      Monday, June 23, 2014
                               )      (10:04 a.m. to 10:47 a.m.)
              Defendants.      )
_____


TELEPHONE CONFERENCE

BEFORE THE HONORABLE JASON B. LIBBY,
UNITED STATES MAGISTRATE JUDGE


Appearances:              See Next Page

Court Recorder:           Judith F. Alvarez

Case Manager:             Kendra Bledsoe

Transcriber:              Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

<u>TELEPHONIC APPEARANCES FOR</u>:


Plaintiffs:                    DAVID L. MOULTON, ESQ.
                               JAMES A. JONES, ESQ.
                               Bruckner, Burch, P.L.L.C.
                               8 Greenway Plaza
                               Suite 1500
                               Houston, TX 77046


Defendants:                    DANIEL DOUGLAS PIPITONE, ESQ.
                               MICHAEL A. HARVEY, ESQ.
                               Munsch, Hardt, Kopf and Harr, P.C.
                               700 Milam Street
                               Suite 2700
                               Houston, TX 77002

1        <u>**Corpus Christi, Texas; Monday, June 23, 2014; 10:04 a.m.**</u>

2                        **(Call to Order)**

3            **THE CLERK:**  Hello.  This is Kendra Bledsoe.  I'm

4    going to formally call the case now.  Court calls Civil Action

5    Number C-13-242, *Aaron Hansen, et al., versus Total Screen*

6    *Solutions, Inc., et al.*

7            Now may I have appearances from counsel, please?

8            **MR. PIPITONE:**  Yes, your Honor.  This is Dan Pipitone

9    and also Michael Harvey.  We're here on behalf of the

10   defendant, and I suppose we're the ones who requested your

11   Honor's attention.

12           **THE COURT:**  Okay.  And, then, Mr. Moulton, are you

13   there on behalf of the plaintiffs?

14           **MR. MOULTON:**  Yes, your Honor.

15           **THE COURT:**  Okay.  Good morning, everyone.  Let me

16   start with something relatively easy.  The clerk's office has

17   asked me to address this issue on the consent forms that the --

18   that the persons who are seeking to consent to be a part of the

19   collective action; the clerk's office, I think, originally

20   listed those individuals on the docket with their personal

21   information, and then a request was made to redact their

22   personal information because they're represented by counsel;

23   and then, I believe, the plaintiffs' attorney, Mr. Moulton,

24   requested that the clerk's office send Mr. Moulton unredacted

25   consent forms.

4

1          Is that correct, Mr. Moulton?

2          **MR. MOULTON:**  Yes, your Honor.  Once they've been

3     opted into the case, we represent them, and we need to know

4     what contact information they want us to use.

5          **THE COURT:**  Okay.  Understood.

6          Any objection to that, Mr. Harvey or Mr. Pipitone, to

7     providing those unredacted consent forms to the plaintiffs'

8     attorney?

9          **MR. PIPITONE:**  Your Honor, no, with one proviso.  In

10    the event that they don't indicate that they want Mr. Moulton's

11    law firm to represent them, then I don't think they should be

12    redacted.

13         **THE COURT:**  Oh, agreed.  Agreed.  If they're

14    appearing pro se without being represented by Mr. Moulton, then

15    their information should be included on the docket.

16         Okay.  I will --

17         **MR. PIPITONE:**  With that understanding, your Honor,

18    we have no objection.

19         **THE COURT:**  Okay.  I will direct the clerk's office

20    to send the unredacted consent forms to Mr. Moulton's office.

21    Of course, if they are not being represented by Mr. Moulton,

22    then their information will be included on the docket.

23         Okay.  So, that's the first thing we've taken care

24    of.  The second thing is, I know -- I understand there are some

25    outstanding discovery matters.  Let me tell you what I am

1    proposing that we do, and if there's anything that I can do in

2    addition to what I'm suggesting, then we'll take that matter

3    up.  I understand there are some outstanding discovery issues.

4    And going back over what we did last time, it was kind of on an

5    ad-hoc basis, and I was kind of taking matters up, just looking

6    through the motions and things.

7            What I would like to do is I would like Mr. Moulton,

8    for any outstanding discovery matters that are still pending,

9    to submit a document to the Court that I will essentially use

10   as an order.  And what I would like in front of me is it to be

11   numbered.  Number one, for instance, would be:  Number 1, tab,

12   Interrogatory Number 27; and then that interrogatory typed out,

13   I guess, in bold, so that I know exactly what the interrogatory

14   is, and then under that bold discovery request, have three

15   essentially options for me to check.  One would be "granted,"

16   with a little space after granted; one would be "denied," with

17   a space after denied; and one would be "agreed to by the

18   parties."  And then after each one of those I need about five

19   blank lines to modify the request.  And, so, no briefing or

20   legal authorities or anything like that, just the actual

21   requests, whether they're requests for production, requests for

22   admission, you know, requests for interrogatories, just so that

23   we have a clear record of each issue that's before us.

24           And, so, because it's the plaintiff's motion, I'd

25   like the plaintiff to prepare that.  But before it's filed with

6

1    the Court -- and I wasn't clear on really what I wanted last

2    time.  I think there was an e-mail that was kind of -- that was

3    submitted to Judge Ramos's case manager, and then there was a

4    response, and I have been provided with it, but I'd rather do

5    things on the record than by e-mail, and -- and after

6    submitting that document, if the parties want to file any

7    additional briefs on the matter, they're welcome to, but that's

8    how I would like to go forward.

9              Any objection to that, Mr. Moulton?

10             **MR. MOULTON:**  No, your Honor.

11             **THE COURT:**  And Mr. Pipitone?

12             **MR. PIPITONE:**  Neither Mr. Harvey nor I have any

13   objection to that, your Honor.

14             **THE COURT:**  Okay.  And what that would do --

15             **MR. HARVEY:**  Your Honor, this is --

16             **THE COURT:**  I'm sorry.  Go --

17             **MR. HARVEY:**  This is Mike Harvey.  Are you going to

18   be considering this on, I guess, kind of on a submission basis

19   as opposed to an actual live argument?

20             **THE COURT:**  Well, what's your suggestion, Mr. Harvey?

21             **MR. HARVEY:**  Your Honor, I would love to provide you

22   the reasoning behind our objection, but, you know, I think, you

23   know, it's hard to -- it's not always easy to look at a request

24   and then objection (indiscernible) to be able to tell exactly

25   what our objection is --

1            **THE COURT:**  I think you're right.  I think what --

2            **MR. HARVEY:**  -- or the --

3            **THE COURT:**  I think -- I'm sorry for interrupting.

4  What I'd like to do is I'd like Mr. Moulton to submit that

5  document, and then I think they'll probably -- the parties, you

6  know, will be able to narrow that down once Mr. Moulton, you

7  know, submits that.  Just document what each of the requests

8  are, and then after you go through each of those requests, it

9  should be pared down, and then I'll have that document in front

10  of me, and we'll just go through them one at a time, and I'll

11  allow the parties a brief opportunity to provide the Court some

12  input, and that way we'll have a clear record of what happens

13  after the hearing.  I would prefer not to have to have the

14  hearing, but sometimes it's necessary to do so.  But that's how

15  I propose going forward rather than just kind of picking

16  through the matters that are outstanding in the motion and

17  responses and doing it that way.

18            **MR. HARVEY:**  That would be great, your Honor, and we

19  appreciate that, and Mr. Moulton and I sat down on Friday for a

20  couple hours and were able to talk through our requests, so,

21  hopefully, prior to the Court's setting a new date we would be

22  able to do that, even though we haven't been able to do that in

23  the past, and figure out some sort of middle ground on -- on

24  his request, so --

25  Q    And I don't have any preference on the -- on the order of

1   how that document is -- you know, there can be an interrogatory

2   and then a request for a production.  They don't have to be

3   all -- they don't have to be in the same order that they were

4   submitted, but just so that I have a record what the actual

5   request is, an option for me to check granted, an option for me

6   to check denied, an option for me to check agreed to by the

7   parties, and then four or five lines where we can write in some

8   modifications.

9         And, then, how much time would you like to submit

10   that to the Court?

11         **MR. MOULTON:**  Your Honor --

12         **THE COURT:**  Now Mr. Moulton.

13         **MR. MOULTON:**  (indiscernible) -- right.  Mr. Harvey

14   and I are going to confer (indiscernible) and his suggestion I

15   -- you know, he just (indiscernible), I think that's a great

16   idea.  Assuming we can confer today or tomorrow, let's have

17   that -- well, I'm thinking by Wednesday or Thursday I could

18   have that for you after we've  conferred.

19         **THE COURT:**  Okay.  So, if you could file that no

20   later than -- I know things take longer than you plan on, so

21   I'll say no longer than this Thursday afternoon; just file it

22   and just file it as a proposed order.  And -- and then we'll

23   go -- and then after I have reviewed it, I'll familiarize

24   myself with what the outstanding issues are, and then I -- I'm

25   not going to require any briefing on the issues.  I'll just

1    have my case manager contact each of you after I receive that

2    document.  We'll set it for a hearing and, hopefully, we'll be

3    able to narrow that risk down so that it won't take a lot of

4    time, but that's the way that we'll handle it.

5            Do you have anything further?

6            MR. HARVEY:  Your Honor --

7            THE COURT:  Go ahead.  I'm sorry.

8            MR. HARVEY:  Yes.  One other thing.  Michael Harvey

9    again.  We had one request that we propounded that we still

10   have a disagreement on.  Would you like us to file a separate

11   order, or should we just provide that request -- and I think

12   Mr. Moulton is aware of it.  Would you like us to provide that

13   request so that he can add it into the order that he's

14   preparing, or would you prefer two different orders?

15           THE COURT:  If you all can agree to put it in the

16   same order, that would be great, but if you can't agree, then

17   file a separate defendant's proposed order and we'll take them

18   up together, but -- I have no preference, but I'm pretty sure

19   that Mr. Moulton will include your request in there as well,

20   and then just call it to my attention when we get to that,

21   whether it's first or last, that that is the defendant's

22   discovery request.

23           MR. HARVEY:  All right.  Thank you, your Honor.

24           THE COURT:  Okay.  Well, it's -- it's a new week, so,

25   hopefully, the United States men's national team will tie or

10

1    win on Thursday and we'll be moving forward successfully, as

2    the nation, and I wish you all the best of luck with your

3    litigation.

4            Mr. Moulton, do you have anything further this

5    morning?

6            **MR. MOULTON:**  Well, no, your Honor, just add that my

7    wife is Portuguese, so we had some friendly rivalry about the

8    game yesterday, and I'm glad we tied --

9            **THE COURT:**  I won't hold that against you.

10           **MR. MOULTON:**  -- in a sense, you know, because it

11   just makes things easier at my house that way.

12           **THE COURT:**  Understood.

13           Do the counsel for defendants have anything further

14   this morning?

15           **MR. PIPITONE:**  You know, your Honor, unfortunately, I

16   do.

17           **THE COURT:**  Okay.

18           **MR. PIPITONE:**  Pardon me.  And maybe we should

19   proceed in the same way that we are with respect to the written

20   discovery.  I have learned last week something that's rather

21   troubling for me.  We, meaning Mr. Moulton and I, had come to

22   an agreement about having depositions of five of the opt-ins.

23   Now, please note that that limitation wasn't an agreed

24   limitation for all opt-ins; it was just preliminarily, while we

25   can, let's get some discovery done on this case, and so he

1    agreed to produce five opt-in plaintiffs for depositions.  And

2    although it took a couple of weeks, Mr. Moulton and I finally

3    came to an agreement on the dates that those depositions were

4    going to be taken.

5            Part and parcel of those depositions was the

6    propounding of written discovery, because, obviously, you want

7    to have some written discovery to those you're going to depose.

8    And -- and I have -- I understood at first Mr. Moulton made a

9    comment to Mr. Harvey during one of the discovery conferences

10   that he was not going to respond to the written discovery

11   propounded upon the five opt-in plaintiffs that we were going

12   to be taking the depositions of.  And that was the first news

13   that we had heard of that.  Since then he has confirmed that.

14           And, so, I'm troubled, very troubled by all this.

15   One, I thought we had an agreement.  I don't "think" we had an

16   agreement; we did have an agreement that there would be

17   depositions of these five opt-ins, for which there would be a

18   need for the responses to the written discovery.  Now, I gather

19   from your Honor you don't necessarily want to hear all this

20   right now.  How do you want me to address that with the Court?

21           **THE COURT:**  Well --

22           **MR. PIPITONE:**  Because I -- I'm having very much

23   difficulty in -- in thinking that we have an agreement, even

24   memorializing an agreement, and then have it turn out not to be

25   an agreement at all.

1          **THE COURT:**  And this is Mr. Pipitone, for the record?

2          **MR. PIPITONE:**  Yes.

3          **THE COURT:**  Okay.

4          **MR. PIPITONE:**  I'm so sorry.  Yes.  Yes.

5          **THE COURT:**  Okay.  Did they -- the electronic

6     recording officer just wants to make sure that we have

7     everybody identified before you speak.

8          Okay.  Mr. Moulton, is this something that we can

9     handle this morning?  And what I mean by that is, what's your

10    position?

11         **MR. MOULTON:**  Well, our position has been from day

12    one, when we talked about the discovery that Mr. Pipitone sent;

13    he -- I don't agree with the way he's characterizing our -- our

14    dispute.  He sent -- originally he sent over -- sent over an

15    extensive set of document requests and interrogatories to every

16    single opt-in plaintiff at the time (indiscernible) ten.  We've

17    had more people opt in since.  But that ended up being 440

18    discovery requests; if you count all the subparts, it's 600

19    something.

20         We had a conference where we talked about how we

21    wanted to have a motion to -- you know, a motion to -- to limit

22    the discovery, because this is a representative action.  The

23    Fifth Circuit makes it clear that once you get conditional

24    certification that you proceed on a representative basis.  And

25    I -- I talked to Mr. Pipitone about agreeing to some limitation

1   on, you know, the number of people that would have to respond

2   to written discovery, the number of people that are going to

3   get deposed, and to basically enter into an agreement on a

4   discovery plan that would go forward on a representative basis.

5   He said that he wanted to not do that, that he insisted on full

6   discovery from every opt-in.  And, so, we've had this ongoing

7   problem.

8           Now, he (indiscernible) -- he sent over deposition

9   notices.  We worked on getting a date, and I'm okay with

10  letting him have five depositions before we figure out who --

11  who's going to be representative or not.  I agreed to that; you

12  know, we didn't need the Court's intervention.  However, we're

13  not agreeing to do discovery for every single person who's

14  opted in.  I attempted to confer with Mr. Pipitone multiple

15  times, but he won't talk to me.  I wanted to give him a couple

16  of proposals of ways to solve this.  We weren't able to confer.

17          **THE COURT:**  Okay.  Let me interrupt.  I'm not -- I'm

18  not --

19          **MR. MOULTON:**  And those are -- those are the dates; I

20  confirmed that we were not going to go forward because we don't

21  have an agreement on how to proceed.

22          **THE COURT:**  Okay.

23          **MR. MOULTON:**  And, so, we want to file a motion that

24  was -- that would let us go forward on a representative basis.

25          **THE COURT:**  All right.  So, let me just interrupt,

1   because I'm not -- I'm not interested today in pointing fingers

2   or finding out, you know -- you know, how we came to this

3   point, but just for my benefit, once -- once we identify the

4   representative members of this collective action, then you

5   would agree that all of the written discovery responses for

6   those persons would be -- you would be required to answer that.

7   Is that correct, Mr. Moulton?

8           MR. MOULTON:   Right.   Once we agreed on a

9   representative sample.   I also -- I don't also -- I also don't

10  think that every single one of them has to go through the

11  entire whole set of discovery that Lauterbach is, for example,

12  going through.   I mean, we're talking -- you know, they want 11

13  years of tax returns, five years of bank statements, every

14  single phone call they ever made during their employment.   I

15  mean it is extensive, and I think the bigger reason for it is

16  to discourage people from being in the case, and I just don't

17  think that level of discovery is required of everyone in the

18  case.   So, that's why I want to work out a plan so we can

19  figure out --

20          THE COURT:   Okay.

21          MR. MOULTON:   -- what discovery (indiscernible).

22          THE COURT:   Let me -- this is going to help you all

23  figure out where to go forward from -- from this point.   I'm

24  not going to -- I'm not going to resolve this completely at

25  this point, but I -- I understand that there may be some need

1    to take depositions at an early state to kind of figure out

2    where -- you know, where the evidence lies and where the

3    parties should go forward from that point.  I do -- I do think

4    that the defendants should have some written discovery before

5    they go in and -- and take the depositions of these -- of these

6    individuals.  I don't know that -- that -- I don't know that it

7    should be the extensive written discovery that you would have

8    for your representative members of the collective action.  So,

9    for instance, what I would suggest is that -- that Mr. Moulton

10   and Mr. Pipitone and Harvey get together and find some kind of

11   common ground on some limited written discovery of the -- of

12   the persons who are going to be deposed, with the understanding

13   that that's likely what I would do if it were presented to me

14   in a motion format, and that once the -- obviously, once the

15   members of the collective action are identified, then there

16   would be another round of written discovery.  And --

17            **MR. PIPITONE:**  Your Honor --

18            **THE COURT:**  Does that help at all, Mr. Pipitone --

19            **MR. PIPITONE:**  Pipitone.

20            **THE COURT:**  -- or Mr. Harvey?

21            **MR. PIPITONE:**  Well, your Honor, this is Dan

22   Pipitone.  In some respects, yes, and I'll be -- to be totally

23   honest with you, the Court, and others, not.  This is -- this

24   is the problem.  There is always some sort of a personal attack

25   involved.  When Mr. Moulton says that we're trying to do

1    discovery on our case, but it somehow is -- it's a -- simply an

2    effort for harassment or discouragement, when, in fact, all

3    we're trying to do is discover our case.  And Mr. Moulton seems

4    to have this predisposition that all these cases are supposed

5    to settle and, so, why haven't we paid them money.  And the

6    fact of the matter is, your Honor, my client wants to fight

7    this because he believes in his business practices.  So, that's

8    one problem.

9           The second problem is, your Honor, that we had an

10   agreement -- I mean an agreement between counsel memorialized

11   in e-mails -- about five depositions, and the (indiscernible)

12   discovery since, written discovery since, for those five opt-in

13   plaintiffs.  Now, one of them, your Honor, has since withdrawn

14   from the case, as has one of the class representatives

15   initially.

16           **THE COURT:**  So, wait a minute.  So --

17           **MR. PIPITONE:**  We had an agreement --

18           **THE COURT:**  So -- I'm sorry for interrupting.  So,

19   now you're only down to three -- three people whose depositions

20   you're going to take?

21           **MR. PIPITONE:**  No, no, no.

22           **THE COURT:**  Or are you going to take the depositions

23   anyway even though they're not part of the -- the lawsuit at

24   this point?

25           **MR. PIPITONE:**  We -- yeah, your Honor, we had an

1    agreement to take five opt-in plaintiffs.  And -- and, so, one

2    of the five that we chose to take has since withdrawn, so I'm

3    just going to assume we'll substitute in a different one for

4    that five opt-in.

5              One other thing I want to reference, too, before --

6    before anyone becomes too predisposed to something, is there

7    are cases -- there are Fifth Circuit cases and there are even

8    some local cases from the Southern District -- that talk about

9    if you only have 16 or 18 total opt-ins, total class

10   representatives, in other words, the total amount of the people

11   in the collective action are 16 or 18, that the Courts

12   encourage there to be full discovery of all of them.  It's only

13   when the class becomes an unwieldy size.  At this stage of the

14   game, your Honor, we have 14 people.  And while there is more

15   time to opt in, obviously, the initial time of opting in is

16   probably the most active.  So -- so, I don't want anyone to

17   mislead and say that there should be a -- just a simple or a

18   representative type of discovery when, in fact, the courts talk

19   about full discovery if the class is small enough.  And right

20   now we're certainly well within those limits.

21             Mr. Moulton also mentioned the discovery plan.  Well,

22   right now I don't see any purpose in discussing a discovery

23   plan, because we don't know how many people are in the class.

24   And what's problematic for Mr. Harvey and I is it just seems

25   like everything that we want to do with respect to discovery to

```
 1   defend our client is either made extraordinarily difficult or

 2   is met with some dilatory tactics.  And I don't like to say

 3   those kind of things, your Honor; it's not my style, and I've

 4   done this for a few years.  But -- but this case is becoming

 5   more burdensome to the Court and to the lawyers than it needs

 6   to.

 7              THE COURT:  Okay.  When are the depositions of the --

 8              MR. PIPITONE:  So, I really would like to get some

 9   help.

10              THE COURT:  When are the depositions of the five

11   persons set?

12              MR. PIPITONE:  The first one is set for June 30th.

13   And I've forgotten the dates for the others, but if you can

14   give me a second, I can look on my calendar right now.

15              June 30th is Federico Grimaldo, and -- bear with me,

16   your Honor.  I'm just looking, reading through these real

17   quick.  And, then, the rest are -- Leonard Lauterbach is

18   Monday, the7th; Alex Pena is Tuesday, the 8th; Jordan Muffler

19   is Wednesday, the 9th; and Wesley Westbrook was set for

20   Thursday, the 10th, but he's the one who has since withdrawn.

21              THE COURT:  Okay.  All right.

22              MR. MOULTON:  Your Honor, if I may?

23              THE COURT:  Mr. Moulton, go ahead.

24              MR. MOULTON:  Yeah.  So, it's -- we don't think that

25   the -- the level of discovery that Total Screen Solutions is
```

1    seeking from these folks is appropriate.  You know, we've

2    already mentioned that.  Now, also, because we were having this

3    problem about the scheduling and working this out as far as the

4    documents and everything last week, I -- I sent an e-mail or

5    contacted -- because Mr. Pipitone won't talk to me, I sent him

6    an e-mail to confirm whether or not he wanted to go forward in

7    light of the fact that we're not going to have the document

8    requests that are due by Wednesday; we're not going to have

9    them ready by then.  It's just -- it's too much, and we think

10   it's just not appropriate forward.  Like he just said, we don't

11   even know who's going to be in the case yet.  We think that we

12   should revisit the deposition dates, what discovery is going to

13   get answered, till we know who's in the case.  Right now we're

14   at 14; there are still several weeks left in this process.  We

15   don't know where we're going to end up.

16          And, so, I sent him a confirmation e-mail to say:

17   Look, you know, I haven't heard back from you on this, and

18   since we're so close to those dates, you know, we have to get

19   travel arrangements, we've got to get people there, we've got

20   to do all of these things; said:  Look, you've got to let me

21   know what's going on.  And he didn't.  And, so, I sent a

22   confirmation to him to say:  Look, since I haven't heard back

23   from you, we're not appearing for these depositions.  And I've

24   told all my clients not to appear.  We're right up against the

25   -- you know, the time (indiscernible).

1          **THE COURT:**  When are --

2          **MR. MOULTON:**  So --

3          **THE COURT:**  When are your answers to their -- I

4    apologize for interrupting, but when are your answers to their

5    written discovery due for these four individuals?

6          **MR. MOULTON:**  Um, well, it's actually ten.  It's ten

7    people who have been served with written discovery.  He keeps

8    saying (indiscernible) --

9          **MR. PIPITONE:**  Your Honor, pardon my interruption.

10   We're only looking for the answers for the four opt-ins that

11   are left whose depositions were agreed to and scheduled.

12         **MR. MOULTON:**  That's not what he said until now.

13         **THE COURT:**  Well, that's why we're in court; we're

14   figuring this out.  When are -- for the four people who are in,

15   Mr. Moulton, when are -- when are those written -- when is that

16   discovery due by you?

17         **MR. MOULTON:**  It's -- it's due Wednesday, according

18   to my calendar.

19         **THE COURT:**  Okay.  All right.  I need to pull up a

20   calendar real quick.

21         **MR. MOULTON:**  He should read -- it's only going to be

22   a few more weeks, this opt-in period, (indiscernible).  Then we

23   can agree on a representative sample, we can agree upon what

24   discovery is going to get done, who's going to get deposed;

25   but, you know, them -- I see this as jumping the gun; let's get

1    all the discovery we can from -- before we know how big the

2    class is or who's in it or what.

3              **MR. PIPITONE:**  Your Honor, if I may just very briefly

4    respond there with -- with, frankly, the key message that I

5    wish to convey to the Court.  Agreements that are made between

6    counsel are not flexible; they're not -- they're not time

7    stamped, and they can't fluctuate with the time.  When

8    Mr. Moulton agreed to do these depositions, there was an

9    agreement, to me, at least, that was a time-honored agreement.

10   And now all of a sudden it's a flexible agreement depending

11   upon the wind and the waves.

12             **MR. MOULTON:**  But -- but it's not, because he said he

13   wanted those depositions only if we were going to be having,

14   you know, the documents.  But we never had an agreement on the

15   documents.  So, there's no -- in theory, we were willing to go

16   through with those depositions, but we --

17             **THE COURT:**  Let me --

18             **MR. MOULTON:**  -- had not reached --

19             **THE COURT:**  Let me interrupt --

20             **MR. MOULTON:**  -- (indiscernible) on --

21             **THE COURT:**  Let me interrupt.  I would rather not

22   have the back and forth between counsel at this point.  That's

23   the type of thing where we can -- you all can get on the phone

24   and work through those matters without me.

25             Kendra, can you hand me a calendar?

1           THE CLERK:  Sure.

2           THE COURT:  I just need a calendar.  Okay.

3           MR. MOULTON:  Your Honor, before you get to the

4   calendar, I have a -- there's a couple issues I've got coming

5   up in July.

6           THE COURT:  Okay.  Just a second.  Let me -- I'm

7   looking at a calendar.  I need just a moment of time to think,

8   so give me a second.  Okay.  The 30th is a week from today.

9   Okay.  All right, Mr. Moulton.  Go ahead.

10          MR. MOULTON:  Well, I just need to let you know that

11  I'll be out of the country from the 11th through the 28th.

12          THE COURT:  Of July?

13          MR. MOULTON:  Leave 11th -- yeah.  And -- excuse me.

14  Yes.  And I'll come back on the 28th in the evening, so, you

15  know, coming back, I mean, there's going to be several days

16  there before I'm going to be ready to do anything, really.

17          THE COURT:  Well, I'm not going to -- I'm not going

18  to order that you interrupt your time off at this point, but

19  this is what I am going to do.  The depositions that are

20  currently scheduled and have been noticed, unless the parties

21  agree to cancel them, both parties, they will go forward as

22  scheduled.  And for the four persons who are still in the

23  lawsuit, the plaintiff will respond appropriately to the

24  written discovery.  However, Wednesday, just to provide less, I

25  guess -- to provide a little bit of relief to the plaintiff,

23

```
 1    even though the deadline was Wednesday, you'll have until

 2    5:00 o'clock on Friday, the 27th, Mr. Moulton, to -- to respond

 3    to the written discovery for the person whose deposition is

 4    scheduled for June 30th.  And, then, for the other -- I'm just

 5    going to grant you some -- some court-ordered extensions.

 6    You'll have, for the remaining three, until Wednesday -- no,

 7    Tuesday, July 1st, to -- to respond to the written discovery

 8    for those remaining three.  So, basically, for the one that's

 9    coming up on June 30th, respond by Friday at 5:00 for the

10    written discovery.  On the remaining three, answer the written

11    discovery by Tuesday, July 1st.

12            And I would really appreciate it if -- if you all

13    could work together on the phone, because I understand that

14    there might be some, you know, discovery requests that are --

15    that are maybe burdensome or over broad, but I really would

16    like to see you all work those things out, because -- I mean, I

17    think that you should be able to work it out without the Court

18    getting involved.

19            So, just to kind of summarize what we've done today,

20    is I've -- I've granted kind of sua sponte some extensions for

21    the plaintiff to respond to certain written discovery that was

22    submitted by the defendants, and I've also ordered the

23    plaintiff to submit a proposed order for outstanding discovery

24    matters -- and what did I say, Thursday?

25            THE CLERK:  Thursday.
```

1          **THE COURT:**  I said Thursday, by close of business

2    Thursday, and I don't know that I need to go over the format of

3    that again, and -- and, hopefully, that will assist everybody

4    moving forward.

5          Mr. Moulton, is there anything further?

6          **MR. MOULTON:**  Yes, your Honor.  There's something

7    that we need to address.

8          **THE COURT:**  Okay.  Go ahead.

9          **MR. MOULTON:**  One of -- one of the guys who's --

10   well, I have a few issues about scheduling.  One of my guys

11   that was scheduled -- I can't remember for what date he was

12   scheduled, but it's in July -- he since -- since we -- since we

13   received the notice for his deposition, he has to move it to

14   July 1st.  I've told Mr. Pipitone that, but I haven't heard a

15   response.

16         **THE COURT:**  He has to move it to -- he asked to move

17   it to July 1st?

18         **MR. MOULTON:**  Well, like, he -- he -- he has asked,

19   but it's just that he had a few days that -- that he was

20   available on the 1st.

21         **MR. PIPITONE:**  Your Honor, if I may, June 30th is

22   Federico Grimaldo.  Is that the one that Mr. Moulton is

23   referring to that he wants to move to July 1?

24         **MR. MOULTON:**  No.

25         **MR. PIPITONE:**  It would be helpful to have a name.

1          **MR. MOULTON:**  Sorry; it's Jordan Muffler, Jordan

2   Muffler that we -- we wrote you -- or I wrote you last week

3   about him.

4          **MR. PIPITONE:**  I don't recall receiving anything

5   about that, but that's fine.

6          **THE COURT:**  Well, listen; and, so, basically, I mean,

7   this is the type of thing that you really don't need my

8   assistance with.  If you -- if it's -- if somebody is

9   unavailable for their deposition, I would really expect the

10  lawyers to work together to try to get it rescheduled, and

11  then, just based on the spirit of -- of what I have ordered,

12  and, you know, if the plaintiff would get the written discovery

13  to the defendants in time for them to have a few days to look

14  at it before taking the deposition, that -- that would be

15  totally appropriate.

16         **MR. SPEAKER:**  Yeah.

17         **MR. MOULTON:**  Your Honor, just a couple more things.

18         **MR. PIPITONE:**  Your Honor, before we move on to

19  something else, if I may, this is Dan Pipitone.

20         **THE COURT:**  Okay.

21         **MR. PIPITONE:**  If we're going to have Federico

22  Grimaldo, and I'm certainly amenable to having Jordan Muffler

23  on July 1st, can I have those discovery responses on Friday,

24  the 28th, or 27th, whatever it is?

25         **THE COURT:**  Mr. Moulton, any objection to that?

 1   That's pretty reasonable?

 2           **MR. MOULTON:**  Right; I think we can do that.

 3           **THE COURT:**  Okay.  So done, Mr. Pipitone.  So

 4   ordered.

 5           **MR. PIPITONE:**  Thank you, sir.  And, then --

 6           **MR. HARVEY:**  Your Honor, Michael Harvey.  If I may

 7   just add one thing on a comment you made earlier about being

 8   able to settle any discovery disputes on the opt-in discovery.

 9   Just for the record and for the Court's knowledge, we've agreed

10   to limit and make reasonable discovery as to Mr. Lauterbach,

11   the discovery that's already been responded to.  The discovery

12   that we've provided -- or propounded on the opt-ins is

13   (indiscernible).  We would agree to -- all the modifications to

14   the discovery that we made for Lauterbach would also apply to

15   the opt-ins, so that (indiscernible) I would think we wouldn't

16   have any sort of argument moving forward.

17           **THE COURT:**  Good.  Fantastic.  Okay.

18           **MR. MOULTON:**  Your Honor --

19           **THE COURT:**  I've tried to close this hearing about

20   five times, but it sounds like I'm not going to yet either.

21   Mr. Moulton, one more -- one more opportunity to -- to jump in.

22   Go ahead.

23           **MR. MOULTON:**  Your Honor, I'm sorry.  And, yeah,

24   there's -- there's another issue.  One of the issues that we're

25   having is that we need some sort of agreement on -- on how we

1    can proceed with these depositions because, basically, they're

2    happening back to back every day, and the (indiscernible) are

3    told (indiscernible) wants full-day depositions.  These are

4    opt-ins, and usually courts will -- will limit the depositions

5    to a shorter time frame, and we need that because there's just

6    one attorney on this case.  I'm going to be preparing clients

7    and attending their depositions, and so what we had proposed

8    was three to four-hour depositions.  Mr. Pipitone had said

9    that, well, if we started at 8:00, we'd probably be done at

10   2:00, but what my -- I'd like to have some sort of order that

11   we can have the depositions done by a certain time, like -- I

12   would prefer, like, 1:00 o'clock.  And, you know, we could get

13   -- they'd get plenty of (indiscernible) time there to depose

14   them about things that they really need, and that way I'd have

15   time to prepare my clients.

16          Another thing that we've experienced from the first

17   depositions in this case are all of the documents that are

18   brought to the deposition that we've never seen before.  We

19   would request that we get any documents that they're going to

20   use in the deposition in advance.

21          **THE COURT:**  Who speaks for the defendant,

22   Mr. Pipitone or Mr. Harvey?

23          **MR. PIPITONE:**  Your Honor, I will.  This is Dan

24   Pipitone.  With respect to the time of the depositions, the

25   rules clearly allow me seven hours.  However, I've already told

28

1    Mr. Moulton that if we can begin these depositions at

2    8:00 o'clock and we only take the breaks that the court

3    reporter needs for his or her comfort, that I shall -- I even

4    used the word "shall" in an e-mail to him -- we shall conclude

5    them by 2:00.  So, I'm willing to cut the time to accommodate

6    his -- his schedule for woodshedding purposes.  And, so, I'm --

7    I've already mentioned that, and he's already agreed to that,

8    so I'm not quite sure why we're --

9              **THE COURT:**  Okay.

10             **MR. PIPITONE:**  -- talking about that again.

11             **THE COURT:**  Well, it --

12             **MR. PIPITONE:**  With respect --

13             **THE COURT:**  Go ahead.

14             **MR. PIPITONE:**  I'm sorry, your Honor.

15             **THE COURT:**  Go ahead.  I'm sorry.

16             **MR. PIPITONE:**  With respect to producing any and all

17   documents that we're going to use during the course of a

18   deposition, I cannot agree to that.  He has asked discovery

19   requests, and we have answered his discovery requests to the

20   best of our ability.  But there may be some things that I have

21   that he hasn't asked for in discovery.  And, so, I don't feel

22   like there is any appropriate requirement placed upon me to

23   give him things I'm going to use at a deposition when he hasn't

24   asked for them prior.

25             **MR. MOULTON:**  The only problem with that is that

1  Rule 26 requires him to identify the documents he's going to

2  use.  And, so, we should get them.

3              **THE COURT:**  Okay.  All right.

4          **MR. MOULTON:**  Not supposed to come into a deposition

5  and get surprised.  I mean, that's not the point, so --

6              **THE COURT:**  Right.  I understand.  Okay.  So, what --

7  what's the number of hours that you have agreed to for purposes

8  of the depositions, the limited number of hours, Mr. Pipitone?

9          **MR. PIPITONE:**  Your Honor, this is Dan Pipitone.  I

10 have already agreed that if we start at 8:00 o'clock, promptly

11 at 8:00 o'clock, we will -- we will conclude by 2:00 o'clock,

12 with whatever breaks that the court reporter needs for his or

13 her comfort.

14             **THE COURT:**  Okay.

15         **MR. SPEAKER:**  Your Honor --

16             **THE COURT:**  And that's an hour for lunch?  Or

17 you're --

18         **MR. SPEAKER:**  (indiscernible)

19             **THE COURT:**  -- you're assuming that you're going to

20 get an hour for lunch?

21         **MR. PIPITONE:**  No, I was, quite frankly, planning on

22 moving through lunch and just getting it done unless the court

23 reporter tells me that he or she would like to take a half hour

24 for lunch.  The problem is, from what I understand, your Honor,

25 is -- is the rule is giving me seven hours; Mr. Moulton wants

1    time to be able to woodshed his witnesses, and which I

2    understand, and so I'm willing to work with this, but I'm not

3    willing to work with this solely to my detriment; I'm getting

4    my allowed time.  So, I am willing to work through lunch to the

5    extent the court reporter wants to; if the court reporter says

6    she needs a half-hour break, or he needs a half-hour break,

7    court reporter wants a ten-minute break every hour, you know,

8    so be it.  I'll certainly -- I certainly will honor what the

9    court reporter wants.  I just don't want there to be a lot of

10   attorney-client conferences that interrupt the deposition and

11   have six hours turn into three and a half hours of deposition

12   time.

13            **THE COURT:**  Okay.  Understood.

14            All right.  This is -- this is what I'm going to do.

15   The defendants will have six hours to take the depositions.

16   That does not include break time that the -- that the plaintiff

17   or plaintiff's attorney have requested.  So, you've got six

18   hours of deposition time for each of these persons to take

19   their testimony, and that shall be extended based on any breaks

20   that are requested to by the plaintiff; and the documents that

21   you intend on using at the deposition I'm -- I'm going to ask

22   that you turn those over at the beginning of the deposition to

23   the plaintiff's attorney.  The documents that you know that

24   you're going to be using during the deposition, I'm not going

25   to ask that you turn them over to them a day or two or three

31

1   days in advance, but when you show up at the deposition, if you

2   have documents that you intend on asking the witness about or

3   the plaintiff about, turn those over at the beginning of the --

4   of the deposition.  That's my order.

5          **MR. PIPITONE:**  I'll do so, your Honor.

6          **THE COURT:**  Okay.

7          **MR. PIPITONE:**  Thank you, your Honor.

8          **MR. MOULTON:**  Your Honor, just if I may make that

9   clear, see, the problem is, is not that they produce the

10  documents; they can -- you know, I don't have a problem with

11  that.  What I'm talking about are documents that they should

12  have identified in Rule 26 and/or that we've asked for.  And if

13  they show up at the deposition with them and -- and we've never

14  seen them, I don't think that's the appropriate time to produce

15  these documents.  And, so --

16         **THE COURT:**  Well, to --

17         **MR. MOULTON:**  -- these documents that

18  (indiscernible) --

19         **THE COURT:**  You'll have to take that -- I can't -- I

20  can't rule in advance on things that aren't properly before me,

21  but I expect the parties to properly supplement the Rule 26

22  disclosures, as I believe is required by the rules, and -- and

23  I -- I believe the defendants have an obligation to do that.

24  If there is some -- something that you believe is egregious,

25  you may take that up as you deem appropriate, but -- but let's

32

1    not worry about it at this point, because it hasn't happened

2    yet.  You know, if there are matters which need to be

3    supplemented for the Rule 26 disclosures, I expect the parties

4    to do so.  And, so, let's not -- I'm not going to give you any

5    advance rulings on what I'll do, because those matters are not

6    currently before me.

7            **MR. PIPITONE:**  Your Honor, thank you.  This is Dan

8    Pipitone.  Thank you for your time, Judge.

9            **THE COURT:**  Okay.  Mr. Moulton, anything further?

10           **MR. MOULTON:**  No, your Honor.

11           **THE COURT:**  Okay.  Everybody clear on their dates and

12   the deadlines?  Mr. Moulton?

13           **MR. MOULTON:**  If we can -- you know, I'm not sure.

14   Are you going to put the -- the deadline for responding to the

15   written requests --

16           **THE COURT:**  That's a --

17           **MR. MOULTON:**  -- in the order?  Or --

18           **THE COURT:**  I'm glad we're going over it, because

19   that's a little bit confusing.  What I -- let's talk about that

20   so that we're all in agreement.  We've said for the first two

21   depositions, there was one that was rescheduled.  One was

22   scheduled for June 30th, and then there was one that was moved,

23   I guess, to a sooner date, to July 1st.  And correct me if I'm

24   wrong --

25           **MR. PIPITONE:**  And, your Honor, this is Dan Pipitone.

33

```
 1    If we put a name to it, that may be helpful.

 2              THE COURT:  Okay.

 3              MR. PIPITONE:  Grimaldo is June 30th; Muffler is

 4    July 1.

 5              THE COURT:  Muffler is July 1, and what was -- I'm

 6    sorry, June 30 --

 7              MR. PIPITONE:  Grimaldo.

 8              THE COURT:  Grimaldo?

 9              MR. PIPITONE:  Grimaldo is June 30th.

10              THE COURT:  Grimaldo is June 30th.  Okay.  So, for --

11    you said Muffler?

12              MR. PIPITONE:  Muffler is July 1.

13              THE COURT:  I got it.  And, then, Grimaldo is June

14    30th.  Okay.

15              For Grimaldo and Muffler, Mr. Moulton shall respond

16    to the written discovery by this Friday, I think I said close

17    of business, on June 27th.

18              MR. PIPITONE:  Your Honor, is the close of business

19    5:00 o'clock?

20              THE COURT:  Well, it depends.  You're right, because

21    now the -- I would like it to be 5:00 o'clock because I think

22    the other deadline that we put for the remaining -- yeah,

23    5:00 o'clock, to answer your question.  Yes.  Five o'clock on

24    Friday.

25              MR. PIPITONE:  Great.  Thank you, sir.
```

1          **THE COURT:**  And, then, for the remaining two persons

2  who are going to be deposed, did I say July 1st?  Is that what

3  we said?

4          **MR. SPEAKER:**  You did, Judge.

5          **THE COURT:**  July 1st by 5:00 o'clock?

6          **MR. PIPITONE:**  Correct.

7          **THE COURT:**  Okay.  July 1st at 5:00 o'clock for the

8  remaining two witnesses.

9          **MR. PIPITONE:**  And those two witnesses, your Honor,

10  just to make it clear, July 7th is Leonard Lauterbach, and July

11  8th is Alex Pena.

12          **THE COURT:**  Pena and Lauterbach.  Okay.  By

13  5:00 o'clock on Tuesday, July 1st.

14          **MR. PIPITONE:**  Great.  Thank you.

15          **THE COURT:**  And, then, the other deadline,

16  Mr. Moulton, was, I think we said, this Thursday at

17  5:00 o'clock?  The proposed order on outstanding discovery

18  matters?

19          **MR. MOULTON:**  Right.

20          **THE COURT:**  And I certainly would be happy if I

21  didn't see that because everybody had agreed on those -- those

22  issues.  But if you can't agree and you just need a ruling from

23  the Court, then -- then, that's fine.  But work together to try

24  to pare that -- to pare that order down, and then we'll have a

25  hearing like we did today, and we'll go through them one at a

35

1    time, and you will get some rulings from the Court.

2             **MR. PIPITONE:**  Thank you, your Honor.  Thank you for

3    your time.  This is Dan Pipitone.

4             **THE COURT:**  Okay, Mr. Pipitone.

5             Mr. Moulton, anything further?

6             **MR. PIPITONE:**  No, your Honor.  Thank you.

7             **THE COURT:**  Okay.  Gentlemen, thank you for your time

8    this morning, and good luck going forward with your litigation.

9             And Court's in recess.

10            **MR. PIPITONE:**  Thank you, your Honor.

11            **MR. MOULTON:**  Thank you, your Honor.

12        **(Proceeding concluded at 10:47 a.m.)**

13

14

15

16

17

18

19

20

21

22

23

24

25

CERTIFICATION


I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.




_____          _____June 27, 2014___


                    TONI HUDSON, TRANSCRIBER