UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
CORPUS CHRISTI DIVISION


AARON HANSEN, ET AL.,            )   CASE NO:  2:13-CV-242
                                 )
               Plaintiffs,       )          CIVIL
                                 )
      vs.                        )   Corpus Christi, Texas
                                 )
TOTAL SCREEN SOLUTIONS, INC., )   Thursday, July 10, 2014
ET AL.,                          )
                                 ) (10:07 a.m. to 11:08 a.m.)
               Defendants.       )
_____

TELEPHONIC DISCOVERY HEARING

BEFORE THE HONORABLE JASON B. LIBBY,
UNITED STATES MAGISTRATE JUDGE


APPEARANCES:

For Plaintiffs:            DAVID I. MOULTON, ESQ.
                          Bruckner Burch
                          8 Greenway Plaza, Suite 1500
                          Houston, TX 77046


For Defendants:           DANIEL D. PIPITONE, ESQ.
                          MICHAEL A. HARVEY, ESQ.
                          Munsch Hardt Kopf Harr
                          700 Milam St., Suite 2700
                          Houston, TX 77002


Court Reporter:           Recorded; FTR

Transcribed by:           Exceptional Reporting Services, Inc.
                          P.O. Box 18668
                          Corpus Christi, TX 78480-8668
                          361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

1 **Corpus Christi, Texas; Thursday, July 10, 2014; 10:07 a.m.**

2 **(Messrs. Moulton, Pipitone and Harvey Appearing Telephonically)**

3 **(Call to Order)**

4 **THE CLERK:** Hello. I'm going to formally call the

5 case now. Court calls Civil Action Number C-13-242, *James*

6 *Lauterbach, et al versus Total Screen Solutions, Inc., et al.*

7 May I have appearances from counsel, please?

8 **MR. MOULTON:** David Moulton for the Plaintiffs.

9 **MR. PIPITONE:** This is Dan Pipitone and Michael

10 Harvey for Total Screens.

11 **THE COURT:** Okay. Good morning, this is Judge Libby.

12 I have this proposed order that's been submitted and what I

13 plan on doing today is going through these individual discovery

14 requests and making a ruling on these matters.

15 Is the Plaintiff ready to do so, Mr. Moulton?

16 **MR. MOULTON:** Yes, your Honor.

17 **THE COURT:** And, Mr. Pipitone, are you as well?

18 **MR. PIPITONE:** Mr. Harvey will speak on our behalf if

19 that's all right with the Court.

20 **THE COURT:** That -- yes, that's fine. Let's see.

21 First off, Mr. Moulton, are all of these matters in this

22 proposed order still pending?

23 **MR. MOULTON:** Yes, your Honor.

24 **THE COURT:** Okay. Let's start with --

25 **MR. PIPITONE:** Your Honor, real quickly, and I

1    apologize for cutting in.  I believe -- and Mr. Mouton, correct

2    me if I'm wrong -- that some of the items that made it into the

3    proposed order have already been agreed to and are marked as

4    such.

5              THE COURT:  Okay.  All right, well --

6         MR. MOULTON:  Right, that's correct, your Honor, and

7    I just may add, there are some that are also partially agreed

8    but because it's not a complete agreement.  We just left it so

9    we can -- but we can explain that as we go through each one.

10             THE COURT:  Okay, I understand.  And just -- when you

11   speak, if -- and I recognize your voices but the record won't.

12   So when you speak if it's not apparent from the context, if you

13   could identify yourself just for the record and then please

14   speak closely into the microphone so that we have an accurate

15   record.

16             Mr. Moulton, for the first item, Plaintiffs' Request

17   for Production Number 9, what would you like to tell me about

18   that request?

19        MR. MOULTON:  Okay.  So this is a request for payroll

20   data for the Plaintiffs.  We are agreed on pay -- on the

21   payroll data for when they worked as sit hands.  TSS has agreed

22   to provide that information.  Now, Plaintiffs --or at least

23   some of the Plaintiffs work in other -- in another position for

24   Total Screens and that's another position called "service

25   tech."

1          Now, what happens when we only have payroll for one

2    position is that we look through -- you know, the payroll we

3    get from TSS will have these gaps and I can think of a specific

4    example.  One of the Plaintiffs, Leonard Lauterbach has, like,

5    a gap with three or four months, for example.  Other Plaintiffs

6    have other gaps of similar times or longer or sometimes

7    shorter.

8          And what we need to do is get that payroll to show

9    that they are, in fact, and during that time working for TSS

10   but they are not using those gaps in time to be freelancers or

11   something working at other places as TSS -- that's what all

12   they claim that they are independent contractors because they

13   move from job to job to job.

14         It will also show us -- we can see the -- we can

15   women working as sit hands and then they get promoted to

16   service tech and/or demoted back down, that the sit hands are

17   following a path of employment at Total Screens like ordinary

18   employees do which is, you know, you can work sort of an entry-

19   level or grunt-level position, if you will, and kind of move up

20   to service tech and you can even demoted out of that position.

21         **THE COURT:**  What's the first --

22         **MR. MOULTON:**  So like seeing the complete picture

23   with TSS, we can understand, you know, the issue in the case

24   which is whether or not they're independent contractors or not.

25         **THE COURT:**  Okay.  And just so I understand, the

1    entry-level position is called what?

2            **MR. MOULTON:**  Sit hand.

3            **THE COURT:**  A sit in?

4            **MR. MOULTON:**  Sit hand or solid control tech.

5    They're -- it's the same thing.  And the other position that

6    they work, which is admitted employee which is a -- it's an

7    employee position by TSS -- is service tech.

8            **THE COURT:**  Okay.  Now, Mr. Harvey, what's the issue

9    with this request?

10           **MR. HARVEY:**  Sure, your Honor, a couple of kind of

11   factual things first.  First of all, sit hand -- the position

12   of sit hand is completely different than the position of

13   service tech.  Mr. Moulton has explained that that's some sort

14   of promotion or demotion-type policy.  That's just simply not

15   true.  A service tech for TS -- or Total Screen is a position

16   in which an individual came out and worked on the rig and spent

17   his entire shift on the rig in an independent contractor

18   position.

19           The position of service tech had completely different

20   responsibilities, completely different obligations and was an

21   employment position with TSS but was completely unrelated to

22   their performance as a sit hand and often, from my

23   understanding from our client, service techs were hired simply

24   as service techs without ever being a sit hand.  So this isn't

25   a stepping stone.  Becoming a sit hand isn't a stepping stone

1    to becoming a service tech but beyond that, your Honor,

2    Mr. Moulton has described what he knew.

3         What he wants to know is when these individuals were

4    service techs.  That information can be garnered in much less

5    burdensome means than by asking for financial documents.

6    Mr. Moulton has said that Mr. Lauterbach had a three- or four-

7    month gap, an issue with a service tech.  Well, it appears to

8    me that Mr. Moulton already knows the Mr. Lauterbach was a

9    service tech and he was a service tech through that three- or

10   four-month -- that he's describing the gap.  He doesn't need

11   the financial documents and what he was paid during that time

12   to determine whether or not he -- there was a gap because he

13   was a service tech.

14        But also, your Honor, this case is about sit hands.

15   They are suing as sit hands and I -- and claim that they were

16   misclassified as sit hands and independent contractors when

17   they should be identified as employees.  This case has nothing

18   to do with service techs.  It has nothing to do with pay as a

19   service tech.  It only deals with the classification of sit

20   hands and the request is overbroad and seeks information that's

21   unrelated to their claims or any of the defenses of this case

22   and that's why we opposed it.

23        **THE COURT:**  Okay.  I think I understand but these are

24   Plaintiffs that are employees of TSS; is that correct?

25        **MR. MOULTON:**  Yes, your Honor.

1          **THE COURT:**  Okay.  Is --

2          **MR. MOULTON:**  We're only asking for ones that worked

3    for TSS and, you know, if the case is only about the time that

4    our Plaintiffs worked as sit hands at TSS, then, you know, we

5    shouldn't have to provide, as we've been ordered --

6          **THE COURT:**  I'm going to interrupt just --

7          **MR. MOULTON:**  -- (indiscernible) about --

8          **THE COURT:**  I'm going to interrupt briefly.  That's

9    Mr. Moulton speaking, for the record.  I'm going to grant this

10   request.  I don't think it's overly burdensome.  I think these

11   are employees of TSS and essentially what the Plaintiff is

12   asking for is working wages for purposes of comparison.  So

13   that request is granted.

14         The next request is Plaintiffs' Request for

15   Production Number 10.  Mr. Moulton, on that one?

16         **MR. MOULTON:**  Your Honor, this one's a very -- is

17   similar to the first one.  The first one is asking for the pay

18   information.  This one's actually -- I'm asking for the dates

19   that they worked.  What we -- well, let me back up.  We've

20   already agreed on 10, that they're -- you know, they're

21   providing the dates that the Plaintiffs worked as sit hands.  I

22   don't think there's a problem with that.  The problem is that

23   they -- they're working as service techs and it's the same

24   thing.  They need, you know, just to include the date with that

25   pay information.  This is just a simple report out of their

1   (indiscernible).

2          **THE COURT:**  I understand.  Having considered my

3   previous ruling, Mr. Harvey, do you have anything further on

4   this request?

5          **MR. HARVEY:**  No, your Honor.  Again, I just don't

6   understand how a comparison as a service tech and when they

7   worked or when they attended and what pay they received relate

8   in any way to this case (indiscernible).

9          **THE COURT:**  I understand and your objection is noted.

10  I will grant Plaintiffs' Request for Production Number 10.  And

11  then Plaintiffs' Request for Production Number 16, all

12  documents indicating the hours, days or shifts Plaintiffs were

13  scheduled to work.  What's this about, Mr. Moulton, that's any

14  different from the previous request?

15         **MR. MOULTON:**  Right.  I appreciate that, your Honor.

16  It's a little different because often in employment situations,

17  a supervisor or the company will provide a schedule.  In other

18  words, that's an instruction about when you're expected to work

19  and a schedule is very helpful in a case like this where you

20  don't have actual records of hours worked.  There's no time

21  clock in this case and so we have the Plaintiffs claiming that

22  they worked, for example, 12 hours a day.

23         Now, if there are schedules that TSS made up that

24  would show, hey, you were scheduled to be at this rig, you

25  know, at these dates or starting on this day and your shift is

1    going to be 6:00 a.m. to 6:00 p.m. or 6:00 p.m. to 6:00 a.m. --

2    which is the way we understand it words -- that lends credence

3    to Plaintiffs' claim that they worked 12 hours.  I mean, you

4    can appreciate that if the schedule said two hours -- that

5    you're scheduled to work two but somebody claims they worked 12

6    would be less credible but when it matches -- when the schedule

7    and the testimony would match, it would lend credence to what

8    they're saying.

9            Now, the other part that's important about a schedule

10   is that a schedule is basically instruction of when you're

11   expected to work which tends to show supervision and control

12   over a worker and that would indicate more of an employee

13   status rather than independent contractor status because an

14   independent contractor is typically not told exactly the hours

15   that they're told -- you know, that they're told to work

16   although it can be that way but it's not always that way.

17           **THE COURT:**  Okay.  Mr. Harvey, your input?

18           **MR. HARVEY:**  Yes, your Honor, two things.  First of

19   all, as to put -- to the extent that it's to be

20   (indiscernible), we object to the request, the request that we

21   just went over, Production Number 10 asks for attendance

22   records, pipeline records, handwritten sheets and work

23   schedules.  That would cover beyond what the sit hands actually

24   work on the job.

25           Second, this isn't just asking for schedules.  It's

1   much broader that.  It's asking for all documents related to,

2   indicating now as daily shifts and Plaintiffs' work schedules.

3   So we're not just asking for a schedule.  We're asking well

4   beyond that and we're asking for -- and Mr. Moulton and I have

5   discussed not just the time they worked, the time that they

6   were possibly scheduled but never worked.  The time that they

7   never worked isn't relevant.  What's relevant is when they

8   actually showed up to work, when they were there and when they

9   performed their job.  When they may have been scheduled isn't

10  important to this case and is irrelevant to this case.

11          **THE COURT:**  Okay.  This is what I'm going to do.  I'm

12  -- I think there is some overlap but basically what the

13  Plaintiff's seeking is the schedule that the Plaintiffs were

14  scheduled to work.  And so I don't know how TSS keeps its

15  records but if they have a schedule of who's scheduled to work

16  when, it's my intent that that document be turned over but I

17  don't know that we need all documents indicating, you know --

18  you know, because that is pretty broad and that could be a

19  bunch of things that aren't really intended to be sought.  So

20  I'm going to try to figure out a way to basically say it.

21  Let's see.

22          **MR. MOULTON:**  Your Honor, this is Mr. Moulton.  If I

23  can --

24          **THE COURT:**  Go ahead.

25          **MR. MOULTON:**  Well, the reason why I'm -- we've

1  worded it in this arguably a little bit broader sense is

2  because schedules -- I mean, an employer's schedule does not

3  always just say "schedule" at the top and look like a calendar.

4  Sometimes they're just a text or an email that says, hey, you

5  know, Mr. Lauterbach, you're scheduled to be at the Neighbor's

6  Rig June 17th from, you know, 6:00 to 6:00 or day hands, which

7  everybody knows is 6:00 to 6:00.  And so an email like that or

8  a text, to me, is a schedule because it's telling him when he's

9  expected to be working.

10          THE COURT:  Okay.

11          MR. MOULTON:  And it doesn't necessarily just say

12  "schedule" at the top.  So that's the reason why we want --

13  that's why we said, you know, documents relating to that.

14  So --

15          THE COURT:  Okay.  Well --

16          MR. MOULTON:  -- if they discover it in an email or

17  text or a caption to us, it doesn't really matter but we should

18  still get it.

19          THE COURT:  I'm alert and concerned of the burden of

20  producing that kind of scope of information and putting the

21  burden on the Defendant to seek through all of its emails of

22  all its employees or shift managers to try to find that type of

23  information.  I think that ordering TSS to produce the

24  schedules that the Plaintiffs were scheduled to work will get

25  at the heart of the matter and that's what I'm going to order.

1              So I'm going to grant it as amended and it'll be in

2      the written order.  I'm just going to in the order put the TSS

3      schedules that the Plaintiffs were scheduled to work and that's

4      my ruling.

5              Plaintiffs' Request for Production Number 27 is all

6      IRS, W-2 and 1099 forms to Plaintiffs that are in the

7      possession of any Defendant.

8           **MR. HARVEY:**  Your Honor, if I can jump in, this was

9      the same issue that we had with some of the prior requests,

10     that it was limited just to the -- to their work as a sit hand.

11          **THE COURT:**  And I'm sorry for interrupting but this

12     is Mr. Harvey?

13          **MR. HARVEY:**  Yes, your Honor, I apologize.

14          **THE COURT:**  Okay.  All right, go ahead.

15          **MR. HARVEY:**  Yeah, Mr. Harvey.  The service techs

16     were employees that received W-2s.  Our opinion is that that

17     information is irrelevant.  The W-2s that they received as

18     service techs isn't irrelevant to the case and that's why we've

19     opposed it.  If the Court's ruling is that that information is

20     relevant or at least discoverable, then I expect --

21          **THE COURT:**  But we're -- okay.  I -- and so I'm sorry

22     for interrupting but there is a -- there should be a time limit

23     on this, right?  We're not -- is there a time limit in the

24     request, Mr. Moulton?

25          **MR. MOULTON:**  I'm certainly willing to agree to the

1    relevant time period which is defined in our request that it's

2    the three-year period prior to filing the lawsuit.  So it would

3    be from -- three years prior to the lawsuits would be -- I

4    don't remember what month it is.  It would be, like, the

5    prior --

6              THE COURT:  I'm just going to put --

7              MR. MOULTON:  -- (indiscernible) of 2010.

8              THE COURT:  I'm just going to put for the relevant

9    time period and the parties can work out what that is without

10   involvement of the Court.

11             But, Mr. Harvey, it sounds like you have input.

12             MR. HARVEY:  Yes, your Honor, I was just recalling

13   that Mr. Moulton had limited the three-year period during one

14   of our prior hearings with the Court to three years from the --

15   I believe the additional order being entered by the Court.

16             THE COURT:  Okay, got it.  And that'll be granted for

17   the limited three-year period.

18             Plaintiffs' Request Production Number 12, all job

19   descriptions applicable to solid -- solids control technicians,

20   solids control hands, et cetera, whether they were classified

21   as employees, independent contractors during the relevant time

22   period.  Okay, what's that about, Mr. Moulton?

23             MR. MOULTON:  Right.  So there are several categories

24   here that I'll clarify.  Now, through discovery we've learned

25   that the various names here are -- there's only two positions

1    here, solids control tech, solid control hand or solids

2    technicians are the sit hands.  That's one category that TSS

3    treats as an independent contractor.

4             And then the service technicians which we've been

5    talking about which is a position that's considered by TSS to

6    be an employee position.  Now, we think the job descriptions

7    are helpful because job descriptions usually talk about the

8    duties, the skills, the expectations, locations of working --

9             **THE COURT:**  Okay, I'm going to interrupt.  Is all

10   you're asking for is the company description of those various

11   classifications of employees?

12            **MR. MOULTON:**  Right, the job descriptions.

13            **THE COURT:**  That's all you're asking for.

14            Mr. Harvey?

15            **MR. HARVEY:**  Your Honor, Mr. Harvey.  This is kind of

16   the main issue we have and it seems to be just a slippery

17   slope.  They ask for, you know, information related with

18   service techs because they want to try to figure out when

19   Mr. Lauterbach or certain sit hands or service techs.  Now for

20   some reason, we want descriptions related to service

21   technicians which has no bearing on this case at all.  There's

22   no conceivable need for that and our concern is that we just

23   keep going down the slope and we're kind of eroding what is

24   relevant to this case and having to provide them information

25   that is -- it's just simply a fishing expedition.

 1              **THE COURT:**  Okay.  I do understand that concern

 2  but --

 3              **MR. MOULTON:**  Your Honor, if I may respond?

 4              **THE COURT:**  -- this is what I'm going to do.  It's

 5  really the burden of -- on TSS of just producing the job

 6  description is minimal.  So I'm going to grant that Request for

 7  Production Number 12.

 8              Request for Production Number 13, all job postings

 9  for solids control technicians, solids control hands, solids

10  technicians and service technicians during the relevant time

11  period.  What's that about, Mr. Moulton?

12              **MR. MOULTON:**  It's very similar to job descriptions.

13  Job postings often contain similar information.  It can

14  describe the duties, the skills, the expectations that are

15  required.

16              **THE COURT:**  Oh, are you talking about for purposes of

17  hiring decisions or like -- when you say "job postings," you're

18  saying like postings for openings -- employment openings or

19  employment opportunities with TSS?

20              **MR. MOULTON:**  Exactly.

21              **THE COURT:**  Okay.  Mr. Harvey, this seems to be

22  getting a little far afield and I want to hear what Mr. Harvey

23  has to say to that.

24              **MR. HARVEY:**  Your Honor, again, that's our concern is

25  that there's no dates in discovery or (indiscernible).

1          **THE COURT:**  Okay.  I'm going to deny the request.

2     It's -- I want to maintain some focus.  I think providing the

3     job descriptions would give the Plaintiff the information that

4     they need.  So Request for Production Number 13 is denied.

5          Now, Plaintiffs' Request for Production Number 14,

6     all documents you prepared, exchanged, submitted or received

7     relating to any unemployment claims by any solids control

8     technicians, solids control hand, et cetera during the relevant

9     time period.  Mr. Moulton?

10         **MR. MOULTON:**  Yes, your Honor.  So workers who filed

11    with the Texas Workforce Commission, you know, they filed an

12    unemployment claim.  There's -- there -- if -- we want to know

13    if TSS ever contested those unemployment claims on the basis

14    that they're independent contractors and during the proceedings

15    that they would have made under oath, what admissions did they

16    make about, you know, the level of control and supervision, for

17    example, that they had over these workers, what level of

18    investment that they provided.  You know, they're going to --

19    the Texas Workforce Commission would have gone through the same

20    factors that are -- that we're dealing with in this case.

21         Were -- was Texas -- was TSS ever successful in any

22    of those challenges?  Could that be the basis for Total Screen

23    Solutions, any -- you know, any defense they have as far as

24    good faith that the Texas Workforce Commission had helped them

25    and they are actually claiming some -- you know, some sort of

1     audit that the Texas Workforce Commission did as part of their

2     good-faith defense.  So these are directly relevant to the

3     case. I mean, they're -- we're talking about --

4              **THE COURT:**  Are --

5              **MR. MOULTON:**  -- the disposition of workers and

6     whether or not TSS, has it made admissions or presented

7     evidence already and whether or not they were successful about

8     their status.

9              **THE COURT:**  Mr. Moulton, did any of the Plaintiffs

10    submit unemployment claims for the time period while they were

11    working for TSS?

12             **MR. MOULTON:**  I'm not aware of any Plaintiffs as of

13    yet but we're still in the opt-in period.  Now, we don't think

14    it should be limited just to Plaintiffs though because the

15    position is the same.

16             **THE COURT:**  Okay.  I'm going to deny that request as

17    too broad at this point.  So that Request for Production is

18    denied.

19             Sorry, Mr. Harvey.  I didn't give you an opportunity

20    to -- for input but that's my ruling.

21             Request for --

22             **MR. HARVEY:**  Thank you, your Honor.

23             **THE COURT:**  Okay.  Plaintiffs' Request for Production

24    Number 18 looks like it has been agreed to.  So no further

25    action is necessary by the Court.

1          Plaintiffs' Request for Production Number 19, all

2   documents relating to Defendants' relationship with each

3   Plaintiff, including but not limited to disciplinary reports,

4   write-ups, warnings, counseling reports, position changes,

5   schedules, classification changes and pay changes.

6          Are you basically asking for the employment file for

7   each Plaintiff, Mr. Moulton, or what are you seeking there?

8          **MR. MOULTON:**  That's exactly what I'm asking for and

9   my -- the reason why I didn't just say "employment file" is

10  because if you ask that in an independent contractor case, the

11  Defendants will say they don't have an employment file because

12  they're not employees.  And so you get -- you just get

13  circular.  So I ask for the typical things that are included in

14  an employment report -- or in an employment file.

15         And we suspect that there are some documents there

16  because we know that there's workers who changed positions

17  between sit hand and service tech.  We know there are pay

18  changes.  We also know there are several allegations against

19  the Plaintiffs so -- of doing things they're not supposed to on

20  the job, whether it's related to drug or alcohol abuse or

21  failing a drug test or failure to stay on a rig or -- the

22  complaints are, you know, things about like -- I guess there's

23  one about not doing the gasoline reimbursement properly.  There

24  are just these things that we expect to be able to see that, in

25  fact, they are a supervised control in their discipline --

1        **THE COURT:**  Okay.

2        **MR. MOULTON:**  -- and that there are rules and

3   regulations they have to follow.

4        **THE COURT:**  No.  And I understand that.

5        Mr. Harvey, what's your position on this request?

6        **MR. HARVEY:**  My position, your Honor, is that the

7   request is overbroad.  The request isn't provide us all the

8   disciplinary reports related to Plaintiffs or provide all

9   write-ups related to Plaintiffs.  The request is all documents

10  related to Defendant's relationship with Plaintiff.

11       Now, it goes on to say including but not limited to.

12  He is still asking for all documents that are related to the

13  Defendant's relationship.  That essentially would be every

14  conceivable document --

15       **THE COURT:**  Okay.

16       **MR. HARVEY:**  -- emails -- if our -- is as an

17  employee, there was a prayer chain sent around between

18  employees, all those documents would fall into this extremely

19  broad category of all documents relating to Defendant's

20  relationship.

21       **THE COURT:**  Okay.  This is what I'm going to do.

22       **MR. HARVEY:**  If we want --

23       **THE COURT:**  I'm sorry for interrupting, Mr. Harvey,

24  but I did.  So I will allow you to continue because I think

25  that's appropriate.  I'm going to narrow the request but I'll

20

1    allow you to continue.  Go ahead.  I'm sorry.

2         **MR. HARVEY:**  No, your Honor.  And I think you've

3    gotten the gist of it and understand what my argument is.

4         **THE COURT:**  Okay.  So what I'm going to do is I'm

5    going to narrow the request to be basically those items that

6    would typically be kept in an employment file, including the

7    disciplinary reports, write-ups, warnings, counseling reports.

8         And so what my intent is that if TSS maintains the

9    position that the Plaintiffs were independent contractors and

10   they don't have employment files for them because they were

11   independent contractors, to the extent that if they were

12   considered to be employees of TSS and an employment file were

13   kept, my intent is that those type of documents, such as

14   disciplinary reports, write-ups, counseling statements,

15   et cetera -- those types of documents would be turned over,

16   okay, those type of documents that would typically be kept in

17   an employment file.  So I'm going to grant it as modified.

18        **MR. HARVEY:**  Your Honor, one other issue that we do

19   have with the request that hasn't been raised yet.  As written,

20   it again asks for all these documents, disciplinary reports

21   related to when the Plaintiffs not only were sit hands but were

22   service techs.  Again, we don't see how disciplinary reports

23   and write-ups of a service tech is related to this case.

24        **THE COURT:**  Just --

25        **MR. MOULTON:**  Your Honor, if I may respond?

1          **THE COURT:**  No.  I'm going to have it be for both

2    their job categories -- both the Plaintiffs' job categories or

3    if they had more than one.  If they're an employee of TSS, TSS

4    has those documents and there may be a reason for separating a

5    service tech's employment file records from a sit hand's

6    employment file but just turn them over and if they are kept

7    separately and you would like to turn them over as they are

8    kept by the business, that's fine but I'm going to order that

9    they be turned over for the various job categories.

10          Okay, Plaintiffs' Request for Production Number 23,

11   all emails, faxes, letters, correspondence, notes, memoranda or

12   other type of documents received from Plaintiffs provided by

13   Plaintiffs, sent to Plaintiffs or provided to Plaintiffs.

14   Mr. Moulton, what's that about?

15          **MR. MOULTON:**  All right.  So, I mean, whether or not

16   a worker is an independent contractor or an employee comes down

17   to, you know, what kind of business relationship is it.  Is it

18   a true independent contractor or is it an employee?  We don't

19   think that there is hardly anything that could be more

20   indicative of that status than the communication sent between

21   the parties.

22          And so this is a request to try to get the

23   communication between them.  You know, are the texts, the

24   faxes, the emails, the documents they exchange -- are they

25   indicative of a business relationship that is like an

1    independent contractor or are they indicative of a that's more

2    like an employee.  And so that's what we're asking here.

3              **THE COURT:**  Okay.  Mr. Harvey, your position?

4              **MR. HARVEY:**  Your Honor, this is the -- essentially

5    the same identical request as the prior request.  Now, we just

6    don't have categories.  If they were just asking for

7    correspondence, we will require you to narrowly tailor your

8    request.  If Mr. Moulton was asking for just correspondence, he

9    should have asked for just correspondence.  What he asked for

10   is any type of document received by Plaintiff, provided by

11   Plaintiff, sent to Plaintiff or provided to Plaintiff.

12   Mr. Moulton likes to focus in on the narrow part of his request

13   but forgets that at the end, he adds, "or any other type of

14   document."

15             We've gone well beyond just correspondence, again,

16   where we have essentially every single document that exists in

17   the world that would need to be produced for this.

18             **THE COURT:**  Okay.

19             **MR. HARVEY:**  It's overbroad.

20             **THE COURT:**  I'm going to interrupt again.  I'm going

21   to deny and just note that it's too broad but, Mr. Moulton, I

22   don't want to work through narrowing it now but you can narrow

23   your request to -- in a manner that is agreeable to the

24   Defendant in that --

25             **MR. MOULTON:**  But can we strike out "or any other

1    type of documents" because that seems to be the problem?  Can

2    we just -- can we do emails, faxes, letters, correspondence,

3    notes and memoranda?

4              **THE COURT:**  Mr. Harvey?

5              **MR. HARVEY:**  Is there a type of document that that

6    list doesn't cover?

7              **THE COURT:**  Mr. Harvey, what was your position on

8    that?

9              **MR. HARVEY:**  Your Honor, it's Mr. Harvey.  I -- you

10   know, looking at that list that he's just described, I can't

11   think of another type of document that it doesn't include.  If

12   Mr. Moulton is looking for email correspondence or

13   correspondence, I'm happy to provide correspondence if he wants

14   to limit it to the request for correspondence.

15             **MR. MOULTON:**  Your Honor, as long as correspondence

16   would cover faxes and texts because I think that --

17             **THE COURT:**  I'm not going to -- just so you know, I'm

18   not going to order at this point the turning over of texts just

19   because that creates a whole other burden of production.

20             **MR. MOULTON:**  Well, then let's do faxes -- how about

21   we agree to this?  Faxes, emails, correspondence.

22             **THE COURT:**  Mr. Harvey?

23             **MR. HARVEY:**  Just so I'm clear, we're agreeing that

24   correspondence is emails and faxes --

25             **THE COURT:**  Yes --

1          **MR. HARVEY:**  -- is that correct?

2          **THE COURT:**  -- that's what we're doing.

3          **MR. HARVEY:**  I'm fine with that.

4          **THE COURT:**  Okay.  So you'll note on my order that I

5     have denied and then I've struck through it and I've put

6     "Granted as modified by the parties."

7          Okay, Plaintiffs' Request for Production Number 24,

8     all reports, emails, faxes, letters, correspondence, notes,

9     memoranda or any other type of documents prepared, signed or

10    authored by Plaintiffs.  That seems very similar to Number 23,

11    doesn't it?

12         **MR. MOULTON:**  It is but it wouldn't necessarily just

13    be correspondence.  What we were looking for here is we were

14    aware when we first got these that there were reports that the

15    Plaintiffs filled out every day and, you know, notes and things

16    that they were keeping track of that they would turn into the

17    company.  And we had a dispute with TSS about what to all those

18    documents because we didn't -- and we knew if we tried to -- if

19    they put it the way we understood it that we won't get it

20    because they wouldn't have that category.

21         And so what we're looking for are basically the

22    reports and, you know, whether it's a report or an invoice or

23    if it's -- I don't know what they call them but they're regular

24    reports that the Plaintiffs are submitting as part of their job

25    and we want to make sure we get that stuff.

1          **THE COURT:**  Mr. Harvey?

2          **MR. HARVEY:**  Your Honor, in the first hearing on the

3    motion to compel, there was a request that asked for something

4    to the extent of daily reports.  We had all agreed on the

5    telephone that we would call those "daily reports."  We're

6    happy to produce daily reports as the parties understand that

7    term to be the reports that the sit hands, if they prepared

8    them -- some sit hands did, some sit hands didn't -- but the

9    reports that they'd prepare on a daily basis describing what

10   their activities were during the day.  We're happy to produce

11   those.

12         Once again, this request doesn't just ask for those

13   documents.  If that's what Mr. Moulton is looking for, what I

14   told him in the past is let me know what you're looking for and

15   we'll work on that but you can't have a request that's not

16   narrowly tailored and is this broad and say, we'll, I'm just

17   trying to find this one document.

18         **THE COURT:**  Okay.  So you've already agreed to

19   produce the daily reports of the Plaintiffs; is that correct?

20         **MR. HARVEY:**  Yes, your Honor.

21         **THE COURT:**  Okay.

22         **MR. HARVEY:**  Yes, your Honor.

23         **THE COURT:**  All right.  I'm going to deny it but I'll

24   note in the order that that is because the Defendant has

25   previously agreed and will disclose or turn over the daily

1    reports of the Plaintiff.

2            Okay.  Plaintiffs' Request for Production Number 26

3    has been agreed, as has Number 39, Number 32, Number 33 and

4    then the last one that is still outstanding is Defendants'

5    Request for Production Number 16, all federal and/or state tax

6    returns filed by you or on behalf -- on your behalf for the

7    period 2003 and to the present time.  What's that about,

8    Mr. Moulton?

9            **MR. MOULTON:**  Okay.  This is a request from

10   Defendants for tax returns going back over a decade for all the

11   Plaintiffs.  The only time it's relevant in the case is from

12   the time -- you know, during the time they worked at Total

13   Screens and the only year that that would be -- well, it only

14   affected 2010.  So that is Problem Number 1.

15           Problem Number 2 is the information in tax returns is

16   way overbroad.  There's lots of information that has nothing to

17   do with the case.

18           Another -- the third problem with it is that the

19   Fifth Circuit has said that tax returns are -- should only be

20   provided or ordered to be disclosed if there's a compelling

21   need for them and a finding that they are relevant.  We don't

22   think there's a compelling need because there's other ways to

23   get the information that TSS wants in those tax returns without

24   producing the entire tax return or even the tax return.

25           We also think they're not relevant because what --

1   one of the things that TSS wants from the tax returns are the

2   -- are to show that the Plaintiffs filed taxes as self-employed

3   but the cases have said, whether or not you file as self-

4   employed is not relevant because a worker's beliefs about what

5   they are, whether or not they're an independent contractor or

6   an employee is not the standard.  It's the economics of realty

7   and moreover that once that employer gives you a 1099, which is

8   what TSS did, there's only one way to file which is file as

9   self-employed.

10          So when a Plaintiff files as self-employed, it's

11  highly prejudicial if a jury or, you know, the person making

12  the decision in the case see that and say, oh, well, since this

13  is filed as an independent contractor, he must be but, in fact,

14  that's the only way he can file once he's been labeled by his

15  employer as an independent contractor.

16          So we don't think whether or not they were -- we

17  don't think how he filed is relevant.  We think that most of

18  the information in the tax return is completely irrelevant and

19  there's other ways to get that information -- the information

20  that they do want.

21          **THE COURT:**  Mr. Harvey?

22          **MR. HARVEY:**  Yes, your Honor, a couple of things.

23  First of all, whether they file a tax return and how they filed

24  their tax returns, whether they misclassified themselves or

25  were untruthful in their class on their tax returns all goes to

1    character of the witness.

2         Second, your Honor, it is relevant and at least

3    discoverable that these individuals were filing prior tax

4    returns and had worked previously as independent contractors

5    and self-employed and now are claiming that they were in this

6    position for several years and didn't realize that they were

7    being identified as an independent contractor, didn't realize

8    that taxes weren't being taken out of their paycheck that they

9    wanted, that they were an independent contractor.

10        There is a dispute in the Circuit courts, as I

11   understand, on whether or not this information is relevant and

12   may be used at trial but all those issues can be dealt with

13   later.  The question is whether it's discoverable, just as

14   Mr. Moulton and the Court's ruling today to get information

15   related to how much we paid Mr. Lauterbach as a service tech,

16   whether we paid him, you know, $10 an hour, $20 an hour.  I

17   would argue that information isn't going to be relevant at

18   trial.  It's not going to get into trial but the Court has

19   decided it's discoverable and so we would ask the same for this

20   information.

21        **THE COURT:**  Okay.  I'm on the fence about this one.

22   I'm on the --

23        **MR. PIPITONE:**  Your Honor, this is Dan Pipitone.  May

24   I add one thing?  I've been rather quiet but might I, sir?

25        **THE COURT:**  Yes, of course.

1          **MR. PIPITONE:**  What's really important about this too

2  is whether somebody has filed tax returns.  If you don't allow

3  this discovery, then we won't find out that people haven't

4  filed tax returns.  And I can tell you right now that the class

5  representative Plaintiff James Lauterbach has not filed tax

6  returns in more than ten years.  We wouldn't have found that

7  out had we not been able to do this discovery.  I took the

8  deposition of Leonard Lauterbach, one of the opt-ins, earlier

9  this week on Monday and he hasn't filed income tax returns

10  either, it doesn't seem, although he was evasive with respect

11  to his answer.

12          If we're not allowed to ask for tax returns, we won't

13  be able to find out really other than taking the word of these

14  Plaintiffs, who are not always of the greatest character -- we

15  won't be able to find out whether they filed tax returns or

16  not.

17          **THE COURT:**  Okay.  And the filing of the tax return

18  is important to your case for what reason?

19          **MR. PIPITONE:**  I think it goes to character and

20  credibility, your Honor, which is always been -- excuse me.  It

21  all -- character and credibility is always an issue during a

22  trial.  It's something that the jury and the Court will always

23  consider and there are cases abound that talk about whether

24  somebody avoids paying taxes, doesn't file tax returns are all

25  relevant to the issue of character and credibility.

1          **THE COURT:**  Mr. Moulton?

2          **MR. MOULTON:**  Well, I just need to respond, your

3     Honor.  If whether or not someone has filed a tax return

4     doesn't say anything about whether or not he assessed control

5     or supervised them.  It says nothing about whether or not they

6     had a working relationship with Total Screens that was more

7     like an employee or independent contractor.

8          **THE COURT:**  This is what I'm going to do.  I'm going

9     to grant the request as modified but I'm going to have it for

10    the relevant time period.  Federal and state tax returns filed

11    by you or on your behalf as it relates to the Plaintiffs at the

12    Defendants' request for the relevant time period which is that

13    three-year time period.

14         I think going back to 2003 is a little bit intrusive

15    and that's my ruling.  It's -- there are issues -- if it were

16    merely credibility, that might not be enough or if it were

17    merely just their status of filing, that might not be enough.

18    A combination of the factors set forth by the Defendant

19    indicates that at least I'm finding that it is discoverable.

20    The issues of admissibility, of course, are something that

21    would have to be decided at trial.

22         Okay.  Those are all of the matters that are on this

23    proposed order.  Mr. Moulton, do you have anything further?

24         **MR. MOULTON:**  No, your Honor, thank you.

25         **THE COURT:**  Okay.  And, Mr. Pipitone or Mr. Harvey?

1          **MR. PIPITONE:**  Your Honor, this is Dan Pipitone.  If

2    I may while we have you, having you now will hopefully avoid us

3    needing you later.  There are a couple things that I would like

4    just to seek the guidance from the Court on.

5          First off, there were five opt-in Plaintiffs who were

6    supposed to be deposed.  One of them that we selected was Fred

7    Grimaldo.  He has not been presented.  We've been asking for

8    several weeks now for dates when Mr. Grimaldo's deposition can

9    be taken.  From what Mr. Moulton has told us, Mr. Grimaldo is

10   working on a rig.  I know that rigs -- it's a manned rig.  They

11   work 14 days on and 14 days off and if they're offshore working

12   international, it's 28 and 28.  And Mr. Grimaldo is working

13   onshore and so he works 14 days on, 14 days off.

14         Easily during this time period, there can be

15   communications with him to set a deposition date.  It's

16   obviously not going to occur before Mr. Moulton's vacation but

17   I would like there to be a date set for Mr. Grimaldo's

18   deposition before Mr. Moulton goes on vacation.

19         **THE COURT:**  Mr. Moulton?

20         **MR. MOULTON:**  Yes, your Honor, I've been in contact

21   with Mr. Grimaldo.  The last time we spoke, he was assigned or

22   working on a rig in Louisiana.  He is not working on a 14-day

23   shift, as I understand it.  Even the records in this case show

24   that people are on rigs often for much, much longer than that

25   and are not able to leave.

1    **THE COURT:**  So, Mr. --

2    **MR. MOULTON:**  We -- I --

3    **THE COURT:**  -- let me interrupt real quick.

4  Mr. Harvey --

5    **MR. MOULTON:**  -- the last communication I had with

6  him was that we would get a date.  I'm working with

7  Mr. Pipitone on that.  I told him before the hearing I would

8  call Mr. Grimaldo right now and try to get a date.  I can't

9  promise I will hear from him before I leave on vacation

10  tomorrow but I will certainly try.

11    **THE COURT:**  When are you coming back from vacation?

12    **MR. MOULTON:**  It'll be -- I get back on the 28th.

13    **THE COURT:**  Of July?

14    **MR. MOULTON:**  Yes.

15    **THE COURT:**  And you would like a date set.  When does

16  discovery end?

17    **MR. MOULTON:**  Hold on.  Let me -- your Honor, I'm

18  sorry.  I didn't look at my calendar.  Yeah, July 28th is when

19  I get back.  I think discovery ends in December, right?

20    **THE COURT:**  I'm just seeing here.  Mr. Moulton, do

21  you have --

22    **MR. SPEAKER:**  Your Honor, before we --

23    **THE COURT:**  No, I'm just -- let me make a few

24  inquiries.  Mr. Moulton, I don't you or your practice but do

25  you have other people who work with you and your firm?  Do you

1    have legal assistants or paralegals or other lawyers?

2            **MR. MOULTON:**  I have -- I share a paralegal but I

3    don't have a lawyer I can -- I have the power to assign to the

4    case.  I don't -- it's just me at this point.

5            **THE COURT:**  Okay.  But there are other people that

6    can contact your client and find out when he's available and

7    get a date?  That's what I'm trying to get at because I don't

8    want to -- I don't just want to leave this without something

9    happening for a period of a couple weeks, is what I'm getting

10   at.

11           **MR. MOULTON:**  Right.  I can have a -- I can have one

12   of the paralegals call --

13           **THE COURT:**  Okay.

14           **MR. MOULTON:**  -- Mr. Grimaldo and try to work out a

15   date.

16           **THE COURT:**  All right.  So --

17           **MR. MOULTON:**  Yeah, we can do that.

18           **THE COURT:**  Mr. Harvey or Mr. Pipitone, you don't

19   have any objection to coordinating that with Mr. Moulton's

20   legal assistant, do you?

21           **MR. PIPITONE:**  Your Honor, this is Dan Pipitone.  I

22   don't have any problem coordinating that at all.  What I'm

23   concerned about is not necessarily whether Mr. Moulton and/or

24   his paralegal are contacting Mr. Grimaldo.  The fact is there

25   are communications -- this is the 21st century -- cell phones,

 1  texts.  I'm not concerned about Mr. Moulton and his paralegal.

 2  I'm concerned that Mr. Grimaldo simply isn't responding,

 3  similar to the way that Aaron Hansen, who was an original class

 4  representative, didn't respond and ended up being dismissed

 5  without prejudice by the Court earlier.

 6          **THE COURT:**  Okay.  So --

 7          **MR. MOULTON:**  That's not true, your Honor.  He is --

 8          **MR. PIPITONE:**  If we could impose -- if we could

 9  impose somewhat of a deadline for Mr. Grimaldo to respond to

10  his lawyers and agree to a date that a deposition can be taken

11  and if he doesn't respond by a certain deadline, that he can be

12  dismissed without prejudice just like Mr. Hansen was.

13          **THE COURT:**  What -- what's your --

14          **MR. MOULTON:**  Hold on.  This isn't a problem.  This

15  isn't a problem that Mr. Grimaldo is not responding.  This is a

16  problem of Mr. Grimaldo working on a rig and just not available

17  right now.  Aaron Hansen was a person who just went AWOL and

18  wouldn't talk to me.  This is -- that is not the case with

19  Mr. Grimaldo.

20          **THE COURT:**  Okay.  Well, I'm not going to set some

21  type of order that automatically, you know, would recommend in

22  any way a dismissal but I think I can set a deadline for

23  Mr. Grimaldo's deposition to be set.  What date are you

24  proposing, Mr. Harvey or Pipitone?

25          **MR. PIPITONE:**  Your Honor, I would think that we

 1   should be able to -- it's already been three weeks.  I would

 2   think that we should be able to hear within the next ten days,

 3   let's say, for Mr. Grimaldo when he will be able to appear for

 4   a deposition.

 5            **THE COURT:**  Okay.

 6            **MR. PIPITONE:**  And I don't mind going to Louisiana to

 7   take it, your Honor.

 8            **THE COURT:**  Okay.  Okay, Mr. Moulton, see if you can

 9   coordinate with your office to get Mr. Grimaldo's deposition

10   set, not taken but the date set within two weeks and if you

11   can't get that done, get back to court with me and I understand

12   Mr. Harvey's concern is that he wants to get a date set to take

13   Mr. Grimaldo's deposition.

14            So I'm ordering that that date be set within two

15   weeks and if it's not set, we'll get back in court and we'll

16   work it out but please to try to work that out, a date that's

17   agreeable to both parties and I think -- I'm not really worried

18   about this because I believe that Mr. Moulton and his legal

19   assistants can make contact with Mr. Grimaldo and that a date

20   will get set.  But to the extent that an order from the Court

21   kind of pushes it along, just try to get that done -- or get

22   that done within two weeks and I'm not -- that's just going to

23   be an oral order.  I'm not going to have that in this separate

24   order.  I think that the parties can get that done.  It's

25   pretty straightforward.

36

1        Mr. Harvey or Mr. Pipitone, anything further?

2        **MR. PIPITONE:**  Yes, your Honor.  This is Dan Pipitone

3   again.  Two other really, I think, should be quick matters.

4   Mr. Moulton has scheduled a deposition of Morgan Hubbard.

5   Morgan Hubbard will be deposed on August 6th.  He used to be an

6   employee of Total Screens.  With respect to all the depositions

7   of the opt-in Plaintiffs, the Defendants were required to turn

8   over to Mr. Moulton any documents that we intended to use as

9   exhibits and I would like to have that same courtesy

10  immediately prior to the conduct of Mr. Hubbard's deposition.

11        **THE COURT:**  Okay.  So you -- you're asking -- this is

12  Mr. Pipitone; is that correct?

13        **MR. PIPITONE:**  Yes, your Honor.

14        **THE COURT:**  Okay.  So you're asking Mr. Moulton to

15  turn over to the Defendant or to counsel for the Defendant any

16  documents that he intends on using at the deposition of

17  Mr. Hubbard; is that correct?

18        **MR. PIPITONE:**  Your Honor, this is Dan Pipitone.

19  Yes, sir, it is, just as we did with respect to the opt-in

20  Plaintiffs' depositions.

21        **THE COURT:**  All right.  And I understand.

22        Mr. Moulton, that shouldn't be a problem, should it?

23        **MR. MOULTON:**  No, your Honor.

24        **THE COURT:**  Okay.  So you're ordered to do so.

25        **MR. MOULTON:**  Okay.

1        **THE COURT:**  All right.  Anything further?  What's the

2  last thing, Mr. Pipitone?

3        **MR. PIPITONE:**  Yes, your Honor.  We also received --

4  excuse me.  The Defendants also propounded written discovery

5  upon the Plaintiff asking for various documents or other

6  information that the Plaintiffs have concerning Mr. Hubbard and

7  those responses are due before the deposition occurs and I just

8  want to make sure that we will get those responses before the

9  deposition occurs when they are due so I won't have to try to

10 move for protective order to delay the deposition until we do

11 get those responses to the discovery.

12       **THE COURT:**  Will you have any objection to complying

13 with the pending discovery requests related to Mr. Hubbard,

14 Mr. Moulton?

15       **MR. MOULTON:**  Your Honor, if I may?  With -- we

16 weren't allowed to get documents before our client's

17 depositions even though we asked for them and then I've just

18 been ordered to produce them by the start of the deposition and

19 I will do that.  Now, as far as the requests generally, there's

20 several more interrogatories that are already above, I believe,

21 their limit on interrogatories and they've also propounded them

22 on every single person who's opted into the case and the

23 responses are due July 31st.  I'll be gone most of the time.

24       We don't think we should have to answer

25 interrogatories specifically about Mr. Hubbard from every

1    single opt-in Plaintiff in order to take his deposition.  What

2    we can do is certainly provide all the documents we have about

3    Mr. Hubbard by the time he is deposed.

4              **MR. PIPITONE:**  Your Honor, this is Dan Pipitone, if I

5    may respond.  Again, Morgan Hubbard was in a capacity, an

6    officer-type capacity with Total Screens at the time.  That's

7    an allegation that the Plaintiffs and the opt-in Plaintiffs

8    have made and we are asking for various documents that the

9    Plaintiff has and that they cannot ambush one of the employees

10   of Total Screens with things that he has not had a chance to

11   look at and consider before being asked of.

12             And so we propounded written discovery just like the

13   Plaintiffs propounded written discovery upon us which we were

14   required to answer and are still answering.  And having that

15   discovery when they are due under the Federal Rule is one thing

16   that we think we're entitled to and then the other thing,

17   having the documents Mr. Moulton intends to use at the

18   deposition is an entirely different matter.

19             So all I'm asking for is essentially -- and I'm glad

20   I brought it up.  I'm just simply trying to confirm that

21   Mr. Moulton is going to comply with the Federal Rules of Civil

22   Procedure concerning discovery issues that are interrogatories

23   and Requests for Production that have been propounded him.

24             **THE COURT:**  Okay.  And --

25             **MR. MOULTON:**  Your Honor --

1          **THE COURT:**  Go --

2          **MR. MOULTON:**  -- it's a representative action.  We

3    don't have to answer -- I mean, I don't think we should have to

4    -- that 30 -- all 30 Plaintiffs now are going to have to answer

5    interrogatories about an individual before I can depose him.

6    Now, Mr. Pipitone has brought up the same argument I brought up

7    a few weeks ago.  We didn't want those depositions getting

8    ambushed and we did already in the case.

9          And now when it's turned on him, he doesn't want it

10   to happen and my intent isn't to ambush but the Defendant has

11   shown up to these -- to the depositions with documents that we

12   asked for that were never produced.  And I don't intend to do

13   that to him but we will provide all the documents we use in

14   that deposition by the time we do the deposition.

15         **THE COURT:**  Mr. Pipitone?

16         **MR. PIPITONE:**  Your Honor, the Federal Rules require

17   the answers in the timeframe.  I think it is July 31st.  I

18   don't recall specifically.  They've had them since the end of

19   June and so we're entitled to the responses.

20         **THE COURT:**  All right.  Let me --

21         **MR. MOULTON:**  They were served on July 1st by a hand

22   delivery.  They're due July 31st.

23         **MR. PIPITONE:**  Okay.  Excuse me, your Honor.  Instead

24   of being June 30th, it's July 30th.

25         **MR. MOULTON:**  The responses, it's some -- it's like

1   20-some-odd people that have to answer and verify

2   interrogatories before I can depose them.  I just don't -- I

3   think this is a representative -- actually I think the Federal

4   Rules say that we should be able to proceed in a representative

5   basis.  This is abusive discovery.

6           It's from every single person who opts in about

7   Morgan Hubbard when he -- you know, he's an officer of the

8   corporation.  That doesn't mean that I have to -- that every

9   single person is going to have to answer discovery for him.  If

10  there's -- there's -- we're supposed to have (indiscernible)

11  here by having a conditionally -- the (indiscernible) is

12  conditionally certified.  We're supposed to be able to proceed

13  through discovery in a representative manner.  It's not

14  supposed to be every single Plaintiff just locked into a case

15  subject to every single discovery question.

16          **MR. HARVEY:**  Your Honor, Michael Harvey.  The concern

17  that I have is that Mr. Moulton wants to use the documents and

18  information from each of the opt-in Plaintiffs.  He wants to be

19  able to take those to a deposition and use those but he doesn't

20  want us to have that information.  He wants to limit our

21  knowledge to what Mr. Lauterbach knows representative of his

22  class and that is simply not how the system works.  It's just

23  patently unfair.

24          For Mr. Moulton to say that we're been using

25  depositions -- or documents in the last depositions that

1    haven't been produced is simply not true.  I've sat through

2    those depositions and I have not used a single document that

3    hasn't been produced or wasn't attached to one of their

4    pleadings or our pleadings.

5              **THE COURT:**  Okay.  What about Mr. Moulton's argument

6    that discovery should be on a representative basis?

7              **MR. PIPITONE:**  Your Honor, this is Dan Pipitone, if I

8    may respond to that.  It is totally fine with me if -- and I

9    don't need each of these 22 Plaintiffs -- and that's what we

10   have here -- to sign verified interrogatory answers or Request

11   for Production of Documents on behalf of the Plaintiffs.  As

12   long as I get answers to the discovery on behalf of all these

13   Plaintiffs in one document, that's good enough for me.  I just

14   don't want to be bushwhacked.  I don't want to be ambushed at

15   the time of this deposition.

16             **THE COURT:**  That sounds manageable.

17             **MR. PIPITONE:**  That's why we propounded the

18   discovery.

19             **THE COURT:**  That sounds manageable, Mr. Moulton.

20             **MR. MOULTON:**  Right.  I mean, we'll give him all the

21   documents that we intend to use at the deposition, everything

22   that I have on --

23             **THE COURT:**  Okay, all right.

24             **MR. MOULTON:**  -- documents already produced on Morgan

25   Hubbard by July 31st.  As far as interrogatories -- I don't

1  know how -- what do we do for the interrogatories?  I mean,

2  having 22 people -- he just said he doesn't want 22 people to

3  have to sign verified interrogatories and I'll accept that.

4          **THE COURT:**  I think what Mr. Pipitone or Harvey -- I

5  think it was Mr. Pipitone -- are asking is that if there are

6  documents -- I could be wrong but if there are documents that

7  are produced that are relevant to one particular Plaintiff,

8  then that Plaintiff answer the interrogatories that are

9  relevant to those documents but I might be wrong about that.

10 Mr. Pipitone, is that what you're looking for?

11         **MR. PIPITONE:**  Yes.  This is Dan Pipitone, your

12 Honor.  I am looking for the answers to responses to a Request

13 for Production of Documents most certainly.  And then with

14 respect to the answers to the interrogatory, I just want to

15 know -- for instance, some of the interrogatories are going to

16 ask, have you had conversations with Morgan Hubbard?  If so,

17 what are the substance of those conversations?  I just want to

18 know so that Mr. Hubbard isn't surprised, has time to think

19 about whatever these conversations are and so just this general

20 information would be helpful as well.

21         **THE COURT:**  Mr. Moulton?

22         **MR. MOULTON:**  Let me -- so what that means is that we

23 have to -- what he's asking -- I don't really understand

24 exactly what he just said.  He doesn't want -- that 22 people

25 aren't going to have to do verified responses to

1    interrogatories and there's several interrogatories and, you

2    know, and -- so what is it?  So who is going to answer?  My

3    thought is that we could have --

4            THE COURT:  I guess what Mr. Pipitone is concerned

5    about is having this representative sample of five people and

6    then having Mr. Hubbard bushwhacked by somebody who's not in

7    the representative sample.  That's basically your concern, is

8    it not, Mr. Pipitone?

9            MR. PIPITONE:  Yes, your Honor, it is and all -- for

10   instance, Mr. Moulton is going to be asking questions of

11   Mr. Hubbard based upon information he has gotten from one or

12   all of these 22 class members, then all I'm asking for is to

13   put that information in an answer to their discovery if I asked

14   about that.

15           THE COURT:  Okay.

16           MR. PIPITONE:  And it doesn't have to be verified.

17           THE COURT:  So we've already verified --

18           MR. PIPITONE:  Obviously he knows about.

19           THE COURT:  Right.  We've already clarified the

20   documents that are going to be produced before the deposition

21   of Mr. Hubbard and to the extent, Mr. Moulton, that you have,

22   you know, information that would be responsive to the

23   Plaintiffs' interrogatories, you know, from your clients -- and

24   I don't have those interrogatories in front of me.  So I'm not

25   capable of providing an example now but you're to ensure that

1    those interrogatories from those Plaintiffs are turned over and

2    so the intent is that if you already know about information

3    that you're going to be asking Mr. Hubbard and that information

4    would be responsive to the Plaintiffs' interrogatories, those

5    interrogatories should be responded.

6         I'm not ordering that you not answer the rest of the

7    interrogatories.  I'm not going to weigh in on that at this

8    point.  I think you-all could work it out.  I think my intent

9    is clear and basically the intent is that, you know, both sides

10   have, you know, open discovery about those matters which they

11   know about and are intending on using.  And so the documents

12   that are going to be used in Mr. Hubbard's deposition by the

13   Plaintiffs shall be turned over before the deposition and it is

14   an order of the Court certainly that those matters which

15   Mr. Hubbard are going to be questioned about which would be

16   responsive to the interrogatories propounded by the Defendant

17   shall also be turned over.

18        And my intent in this, if it's not clear, is just so

19   that there's not any unnecessary gamesmanship by any of the

20   parties and I'm not suggesting that anyone has done that or

21   would do that.  It's just helping both the Plaintiff and the

22   Defendant move forward and I would suggest that the parties

23   work together on whether or not you want to proceed on

24   discovery on a limited basis or if you're going to continue to

25   go forward with discovery on a non-limited basis and if you

45

1   need the Court's intervention, that's a separate matter that

2   I'm quite frankly not ready to really rule on today.

3            I don't know if that helps or not.  Hopefully it

4   does, Mr. Pipitone.  Hopefully we can do that without having

5   further discovery motions on those issues.

6            **MR. PIPITONE:**  I hope so, too, your Honor.  This is

7   Dan Pipitone.  I hope to -- I hope so as well, your Honor.

8   Thank you.  I appreciate your time.

9            **THE COURT:**  Okay, all right.  Anything further,

10  Mr. Moulton?

11           **MR. MOULTON:**  No, your Honor.  Thank you very much.

12           **THE COURT:**  Okay, all right.  And thank you for your

13  appearances and have a good week.

14           **MR. SPEAKER:**  Thank you, sir.  You too, good-bye.

15       **(This proceeding adjourned at 11:08 a.m.)**

16

17

18

19

20

21

22

23

24

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    <u>July 21, 2014</u>

         Signed                                                      Dated

*TONI HUDSON, TRANSCRIBER*